ANIL RAJ
v.
SANDRA TOMASETTI.
No. 2007 CA 2223.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
RANDALL A. SMITH, MICHAEL W. HILL, NEW ORLEANS, LA, AND THEODORE W. NASS GRETNA, LA, Counsel for Plaintiff/Appellant and Cross-appellee Anil raj.
PHILIP K. JONES, JR., DENA L. OLIVIER, JOHN R. McGUIRE, NEW ORLEANS, LA, AND MARION B. FARMER COVINGTON, LA, Counsel for Defendant/Appellee and Cross-Appellant Sandra Tomasetti.
Before: GAIDRY, McDONALD, and McCLENDON, JJ.
MCDONALD, J.
The parties each appeal certain rulings contained in the judgment of the trial court rendered July 19, 2007. We affirm.

FACTUAL AND PROCEDURAL HISTORY
Anil Raj and Sandra Tomasetti were involved in a romantic relationship in which they lived together until December 2001. After the relationship ended, Mr. Raj filed suit against Ms. Tomasetti concerning various financial disputes in the United States District Court for the Eastern District of Louisiana.[1] The parties eventually settled the matter by entering into a consent judgment dated December 18, 2003, which provided as follows, in pertinent part:
IT IS FURTHER ORDERED that defendant Sandra Tomasetti shall pay plaintiff Anil Raj the sum of $100,000.00 on or before December 31, 2004; ... and that if Ms. Tomasetti fails to pay any of the foregoing funds timely, she will owe interest at 8% per annum, plus a penalty of 10% of the amount due per month for every month funds are past due.[2]
Ms. Tomasetti did not challenge the consent judgment in the federal courts by appeal or otherwise. In addition, Ms. Tomasetti did not pay the $100,000.00 to Mr. Raj by December 31, 2004, apparently due to the terminal illness of her father, as well as some serious health issues she was experiencing at the time. However, Ms. Tomasetti did pay Mr. Raj a total of $10,000.00 toward the debt on March 8, 2005.[3] Ms. Tomasetti made no other payments on the debt.
On August 24, 2006, Mr. Raj filed an ex parte petition to make the foreign consent judgment executory in Louisiana in accordance with the Louisiana Enforcement of Foreign Judgments Act, LSA-R.S. 13:4241, et seq. In accordance with LSA-R.S. 13:4242 and 13:4243(A), Mr. Raj attached to the petition a certified copy of the consent judgment and an affidavit setting forth the parties' names and last known addresses. On September 7, 2006, the clerk of court sent a notice of enforcement to Ms. Tomasetti in accordance with LSA-R.S. 13:4243(B). Ms. Tomasetti made no effort to stay the enforcement of the judgment at that time in accordance with LSA-R.S. 13:4244.
Thereafter, Mr. Raj began to attempt to enforce the judgment. On December 21, 2006, Mr. Raj filed a motion to examine judgment debtor, and Ms. Tomasetti was ordered to appear for examination in March 2007. However, when the matter was called, no one appeared, and the matter was continued to May 16, 2007. However, on March 21, 2007, Mr. Raj filed a writ of fieri facias (the writ), which was signed by the trial court on March 26, 2007.[4] The writ commanded the Sheriff of the Parish of St. Tammany (the Sheriff) to seize and set for judicial sale substantially all of the movable and immovable property owned by Ms. Tomasetti in St. Tammany Parish.[5] In reliance on this writ, the Sheriff seized Ms. Tomasetti's immovable and movable property on April 23, 2007, and May 8, 2007, respectively. At the time of seizure, Ms. Tomasetti was advised that according to Mr. Raj's calculations in the writ, the amount allegedly due on the consent judgment was $1,757,533.75.[6] According to the calculation schedule attached to the writ as Exhibit A, it is clear that Mr. Raj arrived at this amount by compounding both the 8% interest provision, and the 10% penalty provision (the penalty provision), on a monthly basis.
On May 17, 2007, Ms. Tomasetti filed a rule to show cause, seeking to have the writ set aside, vacated, and annulled. Ms. Tomasetti further sought to have the amount owed under the consent judgment judicially determined, and she deposited the sum of $107,813.25 into the registry of the court, contending that this was the total amount due under the relevant portion of the consent judgment. Finally, Ms. Tomasetti requested that the Sheriff immediately release all of her movable property from seizure and that sanctions be imposed against Mr. Raj and his counsel of record.
After a trial, which the parties agreed to conduct by submitting affidavits,[7] the trial court dictated oral reasons into the record, finding that the consent judgment was valid insofar as it required Ms. Tomasetti to pay Mr. Raj the principal amount of $100,000.00, plus 8% interest per annum, beginning January 1, 2005. However, the court determined that this interest was simple interest and, therefore, could not be compounded. The court further concluded that the penalty provision was invalid and unenforceable as against public policy. On July 19, 2007, the trial court signed a judgment in accordance with these reasons, which stated, in pertinent part:
[IT IS HEREBY] ORDERED, ADJUDGED and DECREED that the Writ upon which the Sheriff seized Ms. Tomasetti's immovable and movable property is declared to have been improperly calculated and is hereby dissolved, set aside, vacated and annulled; it is further
ORDERED, ADJUDGED and DECREED that the sales of Ms. Tomasetti's seized immovable and movable property scheduled pursuant to the Writ by the Sheriff to be conducted on August 1, 2007, is hereby enjoined permanently; it is further
ORDERED, ADJUDGED and DECREED that the Challenged Provision to the extent it provides for a penalty of 10% and further, any alleged compounding of interest or penalty, is declared to constitute an absolute nullity and as a matter of law cannot be enforced against Ms. Tomasetti; it is further
ORDERED, ADJUDGED and DECREED that the amount due to Mr. Raj pursuant to the Challenged Provision is determined to have been $107,813.25 as of May 25, 2007, that being the same amount deposited by Ms. Tomasetti and accepted into the Registry of this Court by the Clerk of Court on May 25, 2007; it is further
ORDERED, ADJUDGED and DECREED that Mr. Raj is authorized to withdraw the sum of $107,813.25 from the Registry of this Court plus any interest accrued thereon by reason of the investment of these funds by the Clerk of Court and the Clerk of Court is authorized to disburse said amount to Mr. Raj; it is further
ORDERED, ADJUDGED and DECREED that the payment to Mr. Raj from the funds held in the Registry of the Court shall be deemed to be payment in full satisfaction of the Challenged Provision; it is further
ORDERED, ADJUDGED and DECREED that all further enforcement of the Challenged Provision of the Consent Judgment by Mr. Raj or other individual is hereby enjoined; it is further
ORDERED, ADJUDGED and DECREED that the seizure of the immovable property of Ms. Tomasetti effected by the filing of Instrument No. 1617000, Registry No. 1720113 LCM in the mortgage records of St. Tammany Parish be and the same is hereby cancelled; it is further
ORDERED, ADJUDGED and DECREED that the Sheriff shall immediately release from seizure all of the movable property of Ms. Tomasetti which has been taken into the Sheriffs possession and deliver custody of this property to Ms. Tomasetti; it is further
*****
ORDERED, ADJUDGED and DECREED that the request of Ms. Tomasetti for sanctions, attorneys fees, costs and damages arising from this seizure pursuant to the Writ are denied ....[8]
Mr. Raj appealed the judgment, contending that the trial court erred: (1) as a matter of law in declaring the penalty provision in the consent judgment an absolute nullity; (2) as a matter of law in enjoining the enforcement of the penalty provision in the consent judgment; (3) as a matter of law in annulling the writ; (4) as a matter of law in permanently enjoining the Sheriffs sale of Ms. Tomasetti's property, releasing the property from seizure, and canceling the notice of seizure; (5) as a matter of law and fact in finding the amount Ms. Tomasetti owed Mr. Raj under the relevant portion of the consent judgment to be $107,813.25; and (6) as a matter of law and fact in holding that Ms. Tomasetti's payment of $107,813.25 to Mr. Raj constituted full satisfaction of the amount owed by Ms. Tomasetti to Mr. Raj under the consent judgment.
Ms. Tomasetti also has appealed the judgment of the trial court, contending that the trial court erred in ruling that the seizure of her property was lawful, despite the allegedly intentional misrepresentations by Mr. Raj in calculating the amount due under the writ. She further argues that the trial court erred in casting her with the Sheriffs commission and the costs incurred by the Sheriff as a result of the allegedly unlawful seizure of her property. Finally, Ms. Tomasetti contends that the trial court erred in denying her request for damages and sanctions against Mr. Raj and his counsel of record, including reasonable attorney's fees, resulting from the allegedly unlawful seizure of her property.

NULLITY OF THE CONSENT JUDGMENT
On appeal, Mr. Raj contends that the trial court erred in finding that the penalty provision in the consent judgment was absolutely null and in refusing to enforce the penalty provision against Ms. Tomasetti. A consent judgment is a bilateral contract wherein parties adjust their differences by mutual consent and thereby put an end to a lawsuit, with each party balancing hope of gain against fear of loss. LSA-C.C. art. 3071; Plaquemines Parish Government v. Getty Oil Co., 95-2452, p. 6 (La. 5/21/96), 673 So.2d 1002, 1006. A judgment, whether it results from the assent of the parties or is the result of a judicial determination after a trial on the merits, is and should be accorded sanctity under the law. Plaquemines Parish Government, 95-2452 at p. 6, 673 So.2d at 1006.
Because a consent judgment is based on a bilateral contract between the parties, the nullity of a consent judgment generally is governed by contract principles. See Frank L. Maraist & Harry T. Lemmon, Civil Procedure § 12.6 at 341, in 1 Louisiana Civil Law Treatise (1999). Thus, a consent judgment, like a contract, may be annulled for an error of fact or error as to the principal cause of the agreement. LSA-C.C. arts. 1950 and 1967; Stroscher v. Stroscher, 2001-2769, p. 5 (La. App. 1 Cir. 2/14/03), 845 So.2d 518, 524. Moreover, when a contract violates a rule of public order, such as when the object of the contract is illicit or immoral, the contract is absolutely null and may not be confirmed. LSA-C.C. art. 2030.
In this case, the consent judgment contained a penalty provision that required Ms. Tomasetti to pay Mr. Raj "a penalty of 10% of the amount due per month for every month funds are past due." Parties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation. LSA-C.C. art. 2005. However, the clear language of this provision establishes that it seeks to require Ms. Tomasetti to pay punitive, rather than compensatory, damages. It has long been established in Louisiana jurisprudence that, even when dealing with stipulated damages provisions, the law "does not sanction the imposition of [punitory] or exemplary damages by contract or otherwise, but only such as are in their nature and character compensatory." Montz v. Theard, XXXX-XXXX, p. 14 (La. App. 1 Cir. 2/27/02), 818 So.2d 181, 190-91, citing Heeb v. Codifer & Bonnabel, Inc., 162 La. 139, 110 So. 178, 179 (1926). Stipulated damages should reasonably approximate the damages suffered by the obligee and not be penal in nature, and the court must determine the reasonableness of the amount of stipulated damages by inquiring whether the parties attempted to approximate actual damages in confecting the stipulated damages provision of the agreement. Mobley v. Mobley, 37,364, pp. 5-6 (La. App. 2 Cir. 8/20/03), 852 So.2d 1136, 1139.
In this matter, Mr. Raj made no effort to demonstrate that the penalty provision was compensatory in nature or that it approximated his actual damages; indeed, as noted above, Mr. Raj offered no evidence of any kind at the trial of this matter. Furthermore, there can be no doubt that the penalty provision before this court is unreasonable and inequitable in that it was primarily responsible for the rapid escalation of the amount sought by Mr. Raj in the enforcement of the consent judgment. This rapid escalation ultimately resulted in the issuance of a writ seeking enforcement of the consent judgment against Ms. Tomasetti in the amount of $1,757,533.75, only slightly more than two years after the interest and penalty provisions in the consent judgment became effective.
Moreover, where, as here, the primary obligation is one to pay money, the Louisiana Civil Code constrains a party's capacity to stipulate the damages for delay in performance. Specifically, LSA-C.C. art. 2000 provides:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well. (Emphasis added.)
Thus, although LSA-C.C. art. 2005 recognizes the parties' general right to stipulate the damages for breach of contract, LSA-C.C. art. 2000 establishes an exception to that general rule when the obligation is one for the payment of money.
In determining the applicability of laws, it is axiomatic that the more specific governs over the more general. Thompson v. BGK Equities, Inc., 2004-2366, p. 4 (La. App. 1 Cir. 11/4/05), 927 So.2d 351, 353, writ denied, 2005-2405 (La. 3/17/06), 925 So.2d 550. Therefore, in this instance, LSA-C.C. art. 2000 is controlling, and the penalty provision is clearly in violation of that article. See Ekman v. Vallery, 185 La. 488, 169 So. 521 (La. 1936).
Finally, we note that the penalty provision is in violation of the laws of usury, which prohibit the rate of conventional interest from exceeding the rate of 12% per annum. See LSA-R.S. 9:3500(C)(1). Accordingly, for all of the foregoing reasons, we affirm the finding of the trial court that the penalty provision is void and unenforceable.
Nevertheless, as Ms. Tomasetti has conceded, the trial court also was correct that the nullity of this penalty provision does not render the entire consent judgment null. See LSA-C.C. art. 2034. Thus, Ms. Tomasetti is still bound by the other relevant portions of the consent judgment, particularly that portion requiring her to pay Mr. Raj the principal sum of $100,000.00, along with 8% interest per annum. However, interest on interest, otherwise known as compound interest, is not favored in the law and should not be awarded absent express legislative authority. See LSA-C.C. 2001; Seals v. Morris, 465 So.2d 140 (La. App. 1 Cir. 1985). Furthermore, the terms of the consent judgment do not expressly provide that the interest on the principal amount was to be compounded.[9] Accordingly, we agree with the trial court's determination that this interest is simple interest.[10]

TIMELINESS OF CHALLENGE
Mr. Raj next contends that Ms. Tomasetti did not file a timely challenge to the penalty provision in the consent judgment in accordance with LSA-R.S. 13:4243(C), which provides that "[ n]o execution or other process for enforcement of a foreign judgment filed hereunder shall issue until thirty days after the mailing of the notice of the filing of the foreign judgment." The clear language of this provision stays the execution or other enforcement of the foreign judgment for a thirty-day period commencing from the mailing of the notice of the filing of the foreign judgment. During this thirty-day period, the judgment debtor may file a defense to the petition for enforcement, seeking to prolong the stay in accordance with LSA-RS. 13:4244, which provides:
A. If the judgment debtor proves on contradictory motion that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished the security for the satisfaction of the judgment required by the state in which it was rendered.
B. If the judgment debtor proves on contradictory motion any ground upon which the execution of a judgment of a court of this state would be stayed, the court shall stay enforcement of the foreign judgment upon requiring security for satisfaction of the judgment as is required in this state.
According to Mr. Raj's apparent interpretation of these provisions, once this thirty-day period has passed without the judgment debtor having filed a defense, any challenge the judgment debtor may have to the foreign judgment made executory is forever barred.[11] We disagree.
Louisiana Revised Statute 13:4242 provides that once a foreign judgment has been made executory in this state, it shall be treated in the same manner as a judgment of a court of this state. Furthermore, it shall have the same effect and be subject to the same procedures, and defenses, for reopening, vacating, or staying as a judgment of a court of this state and may be enforced in the same manner. The defenses listed in LSA-R.S. 13:4244 do not involve the validity of the judgment on the merits; rather, these defenses involve whether the judgment is susceptible of being enforced immediately or whether the enforcement of the judgment should be stayed pending further proceedings. If no such defenses are filed, the foreign judgment is immediately enforceable after the passage of the thirty-day period. See LSA-R.S. 13:4243(C). However, as stated in LSA-R.S. 13:4242, the foreign judgment is still subject to other procedures and defenses available to judgments of this state.
In this case, Ms. Tomasetti did not file a motion for contradictory hearing within thirty days of the mailing of notice of the filing of the foreign judgment; therefore, Mr. Raj was within his rights to attempt to enforce the judgment any time after the passage of this initial thirty-day period. Nevertheless, Ms. Tomasetti's failure to file any defenses within this period did not prevent her from availing herself of any defenses she may have had to the enforcement of the consent judgment, particularly those defenses based on her claim that a provision in the consent judgment was absolutely null.
As noted above, a contract that is absolutely null may not be confirmed. Absolute nullity may be invoked by any person or may be declared by the court on its own initiative. LSA-C.C. art. 2030. Furthermore, an action for annulment of an absolutely null contract does not prescribe and may be raised at any time as a defense against an action on the contract. LSA-C.C. 2032. Accordingly, Ms. Tomasetti's claim that the penalty provision in the consent judgment was absolutely null was properly and timely raised as a defense to Mr. Raj's attempts to seize and sell her property. Thus, we find no merit to this assignment of error.

CROSS-APPEAL
Ms. Tomasetti also has appealed the judgment of the trial court seeking damages, sanctions, and attorney's fees for the allegedly unlawful seizure of her property pursuant to the writ. In addition, Ms, Tomasetti contends that she should not have been cast for the costs and the Sheriffs commission incurred in the seizure of her property. We disagree.
As noted above, Mr. Raj had a legitimate judgment against Ms. Tomasetti for the sum of $100,000.00, along with interest at the rate of 8% per annum. As Ms. Tomasetti has conceded, the nullity of the penalty provision did not nullify the remainder of the judgment. Furthermore, as is clear from the record, Ms. Tomasetti simply failed to pay the amounts properly owed under the judgment. Thus, Mr. Raj was entitled to enforce that judgment by whatever legal means were available to him, including the use of writ of fieri facias and the seizure and sale of her property by the Sheriff.
Moreover, despite Mr. Raj's apparently mistaken attempts to collect more than he was properly owed under what appeared to be a perfectly valid consent judgment, Ms Tomasetti was not, in fact, required by the trial court to pay more than she actually owed under the enforceable terms of that judgment. Accordingly, we find no error in the trial court's finding that Ms. Tomasetti was not entitled to damages, sanctions, or attorney's fees in this matter. With regard to the costs and the Sheriffs commission, we note that those amounts were calculated based on the amount Ms. Tomasetti deposited into the registry of the court. Thus, they were calculated based solely on the amount she actually had to pay. Accordingly, the trial court did not err in assessing those costs to Ms. Tomasetti.

CONCLUSION
For all of the foregoing reasons, the judgment of the trial court is affirmed. Each party is to bear his or her own costs of appeal.
AFFIRMED.
GAIDRY, J., dissents.
I respectfully dissent. The majority opinion appears to create an exception to the application of the thirty-day period in which to raise a defense as provided for in the Louisiana Enforcement of Foreign Judgments Act (LSA-R.S. 13:4241, et seq.) when the defense raised is that the underlying judgment is absolutely null. I disagree because I find nothing in the statutory language of that provision that would support this interpretation. While I agree that the absolute nullity of a judgment can be raised at any time, Louisiana law dictates that it be raised in the court in which it was rendered. Louisiana Code of Civil Procedure article 2006 provides that an action to annul must be brought in the trial court. Although the article does not expressly state "in the trial court in which it was rendered," our jurisprudence has consistently so held. Pan Am World Services, Inc. v. Abdell, 522 So.2d 1177, 1178 (La. App. 4 Cir. 1990). The nullity of a judgment was demandable only in the court by which the judgment was rendered. In the case of a foreign judgment, a Louisiana court is powerless to nullify a judgment rendered by another court, and the party seeking to nullify the judgment must file suit in the original court. The execution of judgment in Louisiana can then be stayed as provided in La. R.S. 13:4243C and 4244. See Pan Am, 522 So.2d at 1178-79.
Furthermore, in Harrah's Club v. Mijalis, 557 So.2d 1142 (La. App. 2 Cir.), writ denied, 559 So.2d 1387 (1990), the court held that a Nevada default judgment entered against a defendant for a gambling debt was entitled to full faith and credit by a Louisiana court, notwithstanding that the defendant raised the nullity of that judgment based, in part, on public policy allegations, as was done in this case.
Therefore, I believe the provision of the Act applied in this case and required Ms. Tomasetti to attack the consent judgment and seek a stay of the enforcement proceedings within the thirty-day statutory period. She could then raise the nullity defense in the proper foreign court that rendered it, the Louisiana Federal District Court. Because she did not do this, the trial court was without jurisdiction to entertain her rule to show cause raising the nullity defense; therefore, I disagree with the majority opinion affirming the trial court. I believe the clear language of the Act is applicable, and the trial court judgment should be reversed.
NOTES
[1] It is not known specifically what financial disputes arose between the parties as, aside from the consent judgment itself, the record of the federal proceeding is not in the record before this court. At oral argument before this court, counsel for Mr. Raj argued that the parties had signed various promissory notes that were compromised in the consent judgment. However, we are unable to verify these assertions, as these documents are not in the record,
[2] This portion of the consent judgment was referred to as the Challenged Provision in the judgment on appeal before this court. The record indicates that the remaining provisions of the consent judgment are not relevant to the matter before this court.
[3] As. Tomasetti gave Mr. Raj cash in the amount of $5,000.00, as well as a check for $5,000.00, dated February 5, 2005. Mr. Raj signed a document acknowledging receipt of those funds on March 8, 2005.
[4] According to the order attached to the motion, the judgment debtor examination was scheduled for March 13. 2007; however, the minute entry indicates that the matter was called on March 14, 2007, and that neither party appeared. According to Ms. Tomasetti, the continuance of the examination was obtained because the parties were engaged in settlement negotiations. Nevertheless, despite these settlement negotiations, Mr. Raj apparently was proceeding with plans to enforce the judgment.
[5] The writ specifically listed Ms. Tomasetti's home, car, boat and trailer, and her stock in Delta Tech Construction, LLC, as property to be seized and sold in satisfaction of the judgment.
[6] This amount was also subject to additional interest at the rate of 8% per annum, plus certain costs.
[7] Ms. Tomasetti submitted two affidavits in support of her position, Counsel for Mr. Raj stated that he intended to submit affidavits as well; however, no such affidavits were ever introduced into evidence by Mr. Raj at the trial.
[8] The judgment also assessed the Sheriffs costs and commission for the seizure to Ms. Tomasetti.
[9] We further note that at the trial of this matter, counsel for Mr. Raj acknowledged that the interest on the principal amount should not have been compounded and should have been calculated as simple interest.
[10] Ms. Tomasetti deposited the sum of $107,813.25 into the registry of the court, contending that this was the total amount due. Her calculation was based on an original principal amount of $100,000.00 and an interest rate of 8% simple interest per annum. In addition, this calculation credited her for her earlier payments totaling $10,000.00. We find no manifest error in the trial court's finding that this calculation was correct.
[11] In support of this argument, Mr. Raj relies on Ellis v. Professional Management Providers, Inc., XXXX-XXXX, (La. App. 1 Cir. 7/27/05), 923 So.2d 1. writ denied. 2005-2231 (La. 2/17/06), 924 So.2d 1018. In that case, another panel of the First Circuit addressed whether the district court had properly denied a motion to make two Texas judgments executory in Louisiana. At issue in Ellis was whether the district court had properly set the matter for contradictory hearing on its own motion after the thirty-day period had passed, when the judgment debtor had not filed any motions within the thirty-day period, or at any time during the proceedings, The First Circuit determined that it was legal error for the district court to do so. Ellis, XXXX-XXXX, at p. 9, 923 So.2d at 7. This issue is not relevant to the matter before this court, because the Texas judgments at issue in Ellis were not alleged to have been absolutely null.